UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

PATRICIA A. RASKAUSKAS,  :
    Plaintiff :
     :
v. : CIVIL NO. 1:14-CV-01344
     :
COMMONWEALTH OF :
PENNSYLVANIA TURNPIKE :
COMMISSION, :
    Defendant

*M E M O R A N D U M*

*I.*     *Introduction*

In this matter, plaintiff, a female, claims that the defendant failed to hire her, because of her sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 951 *et seq.* Currently pending is defendant's motion for summary judgment that we will grant. (Doc. 10.).

*II.*     *Background*

On July 14, 2014, plaintiff initiated this lawsuit by filing a complaint consisting of the following three counts: <u>Count I</u> – sex discrimination in violation of Title VII; (2) <u>Count II</u> - age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. § 621 *et seq.*; and <u>Count III</u> – sex and age discrimination in violation of the PHRA. (Doc. 1). Plaintiff has since stated her intent to withdraw Count II in its entirety along with a portion of Count III, all relating to her claims of age discrimination. (Doc. 13 at 2, 10). Accordingly, those claims will be deemed withdrawn. With respect to the

remaining claims in Counts I and III, currently pending is the defendant's motion for summary judgment. (Doc. 10). The relevant material facts are as follows:

On August 3, 1994, defendant hired plaintiff, a female, as a workers' compensation manager. (Doc. 12 at ¶ 1). During plaintiff's employment with the defendant, she regularly received annual salary increases based on her performance evaluations. (Id. at ¶ 4). In December 2006, plaintiff's supervisor, who had the job title of "Risk Manager" and also oversaw the worker's compensation claims unit, retired. (Doc. 12-1 at 8-9). Plaintiff then sought to become the Risk Manager; however, she was informed that the defendant was doing away with the job title, but that her title would eventually be changed. (Id.). Thereafter, on or about December 18, 2008, plaintiff's job title was changed to "Manager of Workers' Compensation and Property Claims" and her salary increased. (Doc. 12 at ¶¶ 5-6, 16; see Doc. 12-1 at 16-17). Moreover, plaintiff's job description changed. (See Doc. 12-1 at 10). As part of her new job description, plaintiff reached outside the area of workers' compensation, becoming involved in "risk management" duties and property appraisals. (Id. at 17-18; see Doc. 13-3 at ¶ 7; see also, Doc. 12-2 at 23, 25). According to plaintiff, she had actually been performing risk-management duties since 2006. (See id.). Also, during her tenure with the defendant, plaintiff had supervised four employees. (Doc. 12 at ¶ 9).

On July 20, 2010, plaintiff submitted a resignation letter to her supervisor, Nicholas Grieshaber ("Grieshaber"), who was also the defendant's Chief Financial Officer, advising that she would be resigning effective January 13, 2011, and that she would thereafter begin retirement. (Doc. 12 at ¶¶ 7, 10). Plaintiff chose to retire because of her age and because her job title had not been changed to Risk Manager as she had been

2

requesting while employed by the defendant. (Doc. 12 at ¶ 14; Doc. 12-1 at 5, 15-16). Plaintiff believed that her position should have been reclassified because of how her job had evolved during the later years of her employment with defendant.

Following her resignation, plaintiff began working for ACS Claims Service as a claims adjuster. (Doc. 12-1 at 2). In that capacity, plaintiff did not supervise any employees and had no work responsibilities beyond the area of workers' compensation insurance. (Id. at 3; see Doc. 12 at ¶ 40). Additionally, following plaintiff's resignation, the defendant employed Paige Kerstetter ("Kerstetter") to fill plaintiff's position. (Doc. 12-1 at 45). Kerstetter, a female, possessed an Associate's Degree and had approximately 11 years of experience in the insurance industry. (Doc. 12 at ¶ 24). Not long after Kerstetter accepted the position with defendant as "Manager of Workers' Compensation and Property Claims," the title for said position was changed to Risk Manager. (See id. at ¶ 25). This change did not impact her salary. (Id.) Shortly after changing the job title, however, the defendant issued a new job description and instituted new requirements for the position. (Id. at ¶ 26). Specifically, the defendant required the individual holding the Risk Manager position to possess a Bachelor's degree in Business Administration, Health Policy and Administration or have any equivalent combination of experience, education and training. (Id. at ¶ 27). As well, the minimum requirements were as follows:

> Six years of experience in insurance and / or claims management, with three (3) years in a supervisory capacity, or any equivalent combination of experience, education and training. Must possess general insurance and claims processing methods knowledge. Must have a thorough understanding of risk management theories for identification and financing of loss exposure and loss control. Must possess knowledge of workers' compensation law, contract law, litigation procedures, and medical terminology. The ability to manage outside, independently owned organizations without having direct control over their operations is essential. Must be able to communicate with a broad spectrum of

3

> internal as well as external individuals and groups.  Must be able to communicate and write in English and perform basic math.

(Doc. 12-2 at 5).  Among other duties and responsibilities, the Risk Manager would also participate in the real estate appraisal process, "[c]oordinate[] the approval of engineering insurance certificates with outside insurance consultants," and oversee the defendant's insurance programs.  (Id. at 5, 6).

Six days after the defendant approved the job description and instituted the new requirements for the Risk Manager position, Kersetter advised that she was resigning. (Doc. 12 at ¶ 30).  The defendant then advertised the Risk Manager position, requiring interested applicants to provide a résumé and salary requirements to the Director of Human Resources by December 23, 2011.  (Id. at ¶ 31).

Pursuant to the defendant's procedures for posting and filling this type of position, Human Resources was required to review all applications and résumés received for the position in order to determine whether applicants met the minimum qualifications and requirements.  (Doc. 12-2 at 16).  Thereafter, Human Resources was required to create a "Promotion Application Log" to be sent to the "Department Head," following the vacancy posting period and qualification process.  (Id.).  Said Log was to include the qualification status of applicants as well as their designation as internal or external applicants.[1]  (Id.). After receiving the Log, the Department Head was to convene an interview panel approved by Human Resources, to include at least three members, two being within the specific department and one outside the department.  (Id.).  All qualified internal candidates were

---

[1] We understand the term "internal applicant" to be defined as an individual who is already employed by the defendant at the time an application is submitted.  Conversely, we understand the term "external applicant" to be defined as an individual who is not already employed by the defendant when an application is submitted.  Our ruling herein, however, is not contingent upon our understanding of these terms.

4

required to be interviewed and qualified external applicants were to be scheduled for an interview at the discretion of the department. (Id.). Following the interview process, the interview panel was required to determine the candidates to be recommended to Human Resources. (Id. at 16-17). Human Resources would then submit the panel's recommendations to the Administration Committee for final approval of the candidates and salaries. (Id. at 17).

On November 23, 2011, plaintiff, who only possessed a high school diploma, applied for the Risk Manager position. (Doc. 12 at ¶¶ 38-39). According to plaintiff, she applied for the job because of its title, the functions and duties of which she believed that she had been performing while previously employed by the defendant. (See Doc. 12-1 at 21).

In total, 20 applicants, including plaintiff, were included on the Log that Human Resources was required to create. (Doc. 12 at ¶ 42). Fourteen of those applicants were males and six were females. (Id.). Of those 20, seven were selected for interviews: two females and five males. (Id. at ¶ 43). Although plaintiff was listed as a qualified applicant, she was not selected for an interview because the panel was familiar with plaintiff as well as her job qualifications and capabilities. (Id. at ¶ 44; Doc. 12-2 at 29; Doc. 12-3 at 10). Similarly, eight other "qualified" candidates, six males and two females, were not selected for interviews. (See Doc. 12 at ¶ 43; Doc. 12-2 at 29-30).

Ultimately, on February 27, 2012, the defendant hired Bryan Schmitt ("Schmitt"), a male, for the Risk Manager position. (Doc. 12 at ¶ 47). Schmitt held a Master's Degree in Business Administration from Pennsylvania State University and a Bachelor's Degree in Accounting from Villanova University. (Id. at ¶ 48). In addition,

Schmitt had risk management experience dating back to 1997, and his immediately prior position was Assistant Director, Risk Management for a multi-national corporation. (Id. at ¶ 49). Schmitt, though, resigned from the Risk Manager position on April 23, 2012. (Doc. 12-3 at 22).

Following Schmitt's resignation, the defendant did not re-post, or advertise, the vacant position. The defendant, instead, proceeded to re-interview John Callahan ("Callahan"), an applicant and interviewee who had received high ratings during the first hiring round, for the Risk Manager position. (See Doc. 12-3 at 10, 24-26; see also, Doc. 14 at 8-9, 10-11). On June 8, 2012, defendant hired Callahan, a male, as its Risk Manager. (Doc. 13-1 at ¶ 52). Callahan had a Bachelor's Degree in Business Administration from Temple University, had previously served as the Director of Risk Management from 2007 to 2011 for a private corporation, and served for 20 years as a risk manager for a municipal gas utility. (Doc. 12 at ¶¶ 53-54). Callahan's employment with the defendant ended on February 18, 2015. (See id. at ¶ 55).

III.  *Discussion*

*A. Standard of Review*

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In making this evaluation, all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'" *Roth v. Norfalco*, 651 F.3d 367, 373 (3d Cir. 2011) (citing *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. *Liberty Lobby*, 477 U.S. at 256–57. "The non-moving party cannot rest on mere pleadings or allegations," *El v. Southeastern Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 231–232 (3d Cir. 2001). Allegations made without evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000). "Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

B. Sex Discrimination.

In Count I, plaintiff complains that the defendant failed to hire her for the Risk Manager position that was established after she retired, because of her sex, in violation of Title VII.[2] Under Title VII, it is unlawful for an employer to discriminate against any individual because of the individual's sex. 42 U.S.C. § 2000e–2(a). In addressing the type of claim raised by plaintiff under Title VII in this lawsuit, we must apply the "familiar" *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this burden-shifting framework:

> [T]he employee must first establish a *prima facie* case. If the employee is able to present such a case, then the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its adverse employment decision. If the employer is able to do so, the burden shifts back to the employee, who, to defeat a motion for summary judgment, must show that the employer's articulated reason was a pretext for intentional discrimination.

*Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 364 (3d Cir. 2008); *see Lindsay v. Pa. State Univ.*, No. 4:06–1826, 2009 WL 691936 at *5 (M.D. Pa. Mar.11, 2009) (McClure, J.).[3]

---

[2] The PHRA is construed consistently with interpretations of Title VII. *See Ildefonso v. City of Bethlehem*, No. 11-4033, 2012 WL 2864423, *2 (E.D. Pa. July 12, 2012) (citing *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 318–19 (3d Cir. 2008)); *see also, Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) ("[w]hile the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII . . . [Pennsylvania] courts nevertheless generally interpret the PHRA in accord with its federal counterparts." (citations omitted)); *Smith v. Pathmark Stores*, No. 97-1561, 1998 WL 309916, *3 (E.D. Pa. June 11, 1998) ("courts have uniformly interpreted the PHRA consistent with Title VII" (citations omitted)). The same ruling with respect to plaintiff's Title VII claim, therefore, will apply to her PHRA claim in Count III, partially premised upon sex discrimination.

[3] We emphasize that in the employment-discrimination context, "the burden of persuasion on summary judgment remains unalterably with the employer as movant." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008). Therefore, "[t]he employer must persuade [the Court] that even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor." *Id.* (citing *Sorba v. Pennsylvania Drilling Co., Inc.*, 821 F.2d 200, 201–02 (3d Cir. 1987)).

In order to establish a *prima facie* claim of discrimination under Title VII in the failure-to-hire context, a complainant must show the following elements: (1) she is a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected despite being qualified; and (4) under circumstances that raise an inference of discriminatory action. *Waris v. Heartland Home Healthcare Services, Inc.*, 365 F. App'x 402, 404 (3d Cir. 2010) (per curiam) (non-precedential) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)). Stated differently, "[a]t the *prima facie* stage, a plaintiff must present evidence that 'establish[es] some causal nexus between [his or her] membership in a protected class and the decision not to [hire him or her].'" *Nunn v. NHS Human Services, Inc.*, No. 13-3140, 2015 WL 3604164, at *7 (E.D. Pa. June 9, 2015)(quoting *Sarullo*, 352 F.3d at 798).

The defendant concedes that plaintiff can satisfy the first three elements of a *prima facie* case of discrimination, but not the fourth. (Doc. 11 at 12). To establish this fourth element, plaintiff must show that the adverse employment action, i.e., the failure to hire, was made "under circumstances that give rise to an inference of unlawful discrimination." *Waldron v. SL Industries, Inc.*, 56 F.3d 491, 494 (3d Cir. 1995). Plaintiff may satisfy this element by demonstrating that defendant filled the Risk Manager position by selecting someone of lesser or equivalent qualifications who was not a member of plaintiff's protected class. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 540–41 (3d Cir. 2006) (noting that, in order to establish a *prima facie* case of discrimination, courts should look to the hiring decision to determine if plaintiff was at least as qualified as the person selected for the position, not necessarily better qualified than that person) (citing *Pinckney v. Cnty. of Northampton*, 512 F.Supp. 989, 998 (E.D. Pa.

1981), *aff'd* 681 F.2d 808 (3d Cir. 1982)); *Rodriguez v. Nat'l R.R. Passenger Corp.*, No. 11–0043, 2012 WL 2343306, at *7 (E.D. Pa. June 20, 2012) (DuBois, J.) (concluding that plaintiff failed to establish the fourth prong of the *prima facie* case as, *inter alia*, he could not show that he was at least as qualified as the person who was hired).

Based on the evidence presented at this stage, viewed in the light most favorable to plaintiff, we agree with defendant that plaintiff cannot establish a *prima facie* case of sex discrimination. Indeed, it is readily apparent from the undisputed evidence that plaintiff was not as qualified as Callahan or Schmitt, who each possessed college degrees and had noticeably more, relevant, work experience. (See also, Doc. 12-3 at 16, 19-20, 33-35). That Callahan and Schmitt did not have long tenures with the defendant does not permit an inference that plaintiff was as qualified as they were. Other factors could have come into play after Callahan and Schmitt each took on the position as Risk Manager. Also, the defendant did not require applicants to have prior experience working for it as a minimum qualification for the position. Moreover, plaintiff relies upon insufficient, and largely uncorroborated, evidence in an attempt to show that sexual discrimination permeated the workplace. Further, to the extent it is relevant, the undisputed evidence presented demonstrates that two females were selected for interviews during the round when Schmitt was eventually hired as Risk Manager, and, during the round when Callahan was hired, plaintiff does not point to evidence in the record demonstrating any hint of discriminatory animus that could be attributed to the defendant. A reasonable juror, thus, could not find in plaintiff's favor on her claim of sex discrimination since she has not demonstrated a *prima facie* case.[4]

---

[4] We do not view plaintiff's complaint as encompassing a claim of sexual harassment because of a hostile work environment, (Cf. Doc. 1 at ¶¶ 30-31), and it is axiomatic that a complaint cannot be

*IV.	Conclusion*

Since plaintiff cannot make out a *prima facie* case of sex discrimination under Title VII or the PHRA, summary judgment will be entered in favor of the defendant on Counts I and III, the only claims plaintiff has continued to pursue. An appropriate Order will be issued.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

---

amended through a brief. *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173 (3d Cir. 1988).